UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID BRODA,<br><br>  Plaintiff,<br><br>v.<br><br><br>EQUIFAX INFORMATION SERVICES LLC, TRANS UNION LLC, FREEDOM MORTGAGE CORPORATION, successor by merger to ROUNDPOINT MORTGAGE SERVICING LLC, and LOAN CARE LLC,<br><br><br>  Defendants. | Civil Action: 1:24-cv-1139<br><br>With Jury Demand Endorsed |

# COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, David Broda ("Plaintiff"), by and through counsel, for his Complaint against Defendants, Equifax Information Services LLC, Trans Union LLC, Freedom Mortgage Corporation, successor by merger to Roundpoint Mortgage Servicing LLC, and Loan Care LLC jointly, severally, and in solido, states as follows:

## I. INTRODUCTION

1. Two of the Defendants are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and Defendants, Freedom Mortgage Corporation, successor by merger to

Roundpoint Mortgage Servicing LLC and Loan Care LLC are furnishers of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.  Plaintiff, David Broda, is a natural person residing in Tippecanoe County, Indiana, and is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.  Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.  Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial

district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

5. Upon information and belief, Defendant Freedom Mortgage Corporation, successor by merger to Roundpoint Mortgage Servicing LLC which may also hereinafter be referred to as "Freedom," "Roundpoint," "Freedom/Roundpoint," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a New Jersey corporation that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 907 Pleasant Valley Avenue, Ste. 3, Mount Laurel, New Jersey 08054. Freedom is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

6. Upon information and belief, Defendant Loan Care LLC, which may also hereinafter be referred to as "Loan Care," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Virginia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 3637 Sentara Way, Virginia Beach, VA 23452. Loan Care is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7. As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

### III. JURISDICTION AND VENUE

8. Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

9. Venue is proper in this District, because CRA Defendants and Furnisher Defendants transact business in this District. Freedom's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the District of New Jersey as further described. 28 U.S.C. § 1391.

10. Venue is further proper in this District, because CRA Defendants entered into agreements with Freedom in this judicial district to receive credit reporting data concerning Plaintiff. Any and all

requests to investigate Plaintiff's dispute(s) sent from the CRA Defendants as part of their reinvestigation was submitted to Freedom's headquarters and investigated by the furnisher Freedom using Freedom's resources located at or closely connected to this judicial district. Freedom managed Plaintiff's mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV. FACTUAL ALLEGATIONS

11. Upon information and belief, in or around August 2015 Plaintiff secured a mortgage for his property located at 3253 Hanover Dr., Lafayette, IN 47909.

12. On October 12, 2016, Plaintiff filed for a Chapter 13 bankruptcy. A redacted copy of Plaintiff's chapter 13 bankruptcy docket report is attached hereto as Exhibit "A".

13. On Janaury 12, 2017, Plaintiff Chapter 13 payment plan was confirmed. *See* Exhibit "A".

14. Upon information and belief, sometime thereafter, Roundpoint Mortgage Servicing LLC acquired Plaintiff's mortgage loan and assigned loan number 596200281xxxx, hereinafter ("Roundpoint mortgage account").

15. Sometime around 2020, Roundpoint was sold, including all rights, liabilities, mortgage loan servicing responsibilities, and furnishing responsibilities, to Freedom.

16. Sometime thereafter, Loan Care LLC acquired Plaintiff's mortgage loan from Roundpoint and assigned loan number 623002299xxxx, hereinafter ("Loan Care mortgage account").

17. In 2021, Nationstar Mortgage LLC acquired Plaintiff's mortgage loan from Loan

Care.

18. On July 11, 2022, Debra L. Miller, Trustee for Plaintiff's Chapter 13 Bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Trustee's Final Report and Account is attached hereto as Exhibit "B".

19. On August 18, 2022, Plaintiff was discharged from his chapter 13 bankruptcy, and excepted from discharge Plaintiff's Mortgage, which was serviced at some point during the bankruptcy by Roundpoint and Loan Care, hereinafter, ("The Disputed Accounts"). A redacted copy of Plaintiff's Chapter 13 Bankruptcy Discharge Order is attached hereto as Exhibit "C".

20. Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a Chapter 13 Bankruptcy.

21. On or around August 29, 2022, Plaintiff's Chapter 13 Bankruptcy was terminated. *See* Exhibit "A".

22. Throughout Plaintiff's Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy Trustee, timely monthly mortgage payments were made to the mortgage account serviced by Roundpoint, Loan Care, and Nationstar.

23. After discharge, and to this day, Plaintiff still lives in the home and makes timely and regular mortgage payments to the now Nationstar Mortgage, has historically made timely and regular payments to the Roundpoint, Loan Care, and Nationstar Mortgages, even after Plaintiff's bankruptcy, and plans on continuing to make timely and regular mortgage payments to the Nationstar Mortgage.

24. Sometime in August 2023, Plaintiff obtained his three-bureau credit report and noticed that the Experian and Trans Union credit report(s) were not accurate. A redacted copy of

Plaintiff's three-bureau credit report is attached hereto as Exhibit "D".

25. Within the Equifax and Trans Union credit reports Plaintiff noticed that they reported the Roundpoint mortgage account without the correct update that indicated that this secured debt was initially filed, and the borrower was later granted a discharge. This led to reporting this closed and current account as open, with a $309 payment amount. Trans Union also reported the Loan Care account without the correct update that indicated that this secured debt was no longer part of the bankruptcy, as derogatory and with references to the Chapter 13 Bankruptcy. The reporting is incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was successfully discharged—excepted the secured mortgage debt from being discharged, therefore, any remarks and/or references and/or suppression codes linked to Plaintiff's chapter 13 bankruptcy should have been removed from the Roundpoint Mortgage tradelines after the Bankruptcy was discharged. [1]

26. Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

27. In or around October 2023, Plaintiff sent direct disputes to Equifax and Trans Union and requested that the CRA Defendants investigate the reporting of the disputed accounts. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the the disputed accounts.

28. Within these dispute letters, Plaintiff described in great detail the issues and the misreporting following his bankruptcy and enclosed copies of either his bankruptcy docket report, trustee final report, and/or discharge order. Redacted copies of Plaintiff's unsigned dispute letters sent to Equifax and Trans Union are attached hereto as Exhibits "E" and "F" respectively.

29. Equifax responded to Plaintiff on November 24, 2023 and deleted the Roundpoint tradeline rather than modify it with the correct reporting. A redacted copy of Equifax's Response to Plaintiff is attached hereto as Exhibit "G".

30. Equifax's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Roundpoint tradeline and gave no explanation as to why it failed to sufficiently update the Roundpoint Mortgage tradeline when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, was successfully discharged, and continued to make payments on the mortgage account because it was still open following the bankruptcy discharge.

31. Equifax's response(s) were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or

evidence and failed to remedy the inaccuracies within the Roundpoint Mortgage tradelines.

32. Plaintiff sent a very clear dispute, and yet Equifax made no changes to the disputed information, bankruptcy status, and/or account status.

33. Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiff's Roundpoint account.

34. Upon the Plaintiff's request to Equifax for verification and addition regarding the Roundpoint mortgage account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Equifax failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff's with a response communicating the results. Further, Equifax did not make any attempt to substantially or reasonably verify the Roundpoint Mortgage account.

35. In the alternative, and in accordance with Equifax's standard procedures, Equifax failed to contact Freedom, therefore, failed to perform any investigation at all.

36. In the alternative to the allegation that Equifax failed to contact Freedom, it is alleged that Equifax did forward some notice of the dispute to Freedom, and Freedom failed to conduct a lawful investigation.

37. Trans Union responded to Plaintiff on November 28, 2023 and deleted both the Roundpoint and Loan Care tradelines rather than modify them with the correct information. A redacted copy of Trans Union's Response to Plaintiff is attached hereto as Exhibit "H".

38. Trans Union's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the disputed tradelines and gave no explanation as to why it failed to sufficiently update the disputed tradelines

when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, was successfully discharged, and continued to make payments on the mortgage account because it was still open following the bankruptcy discharge.

39. Plaintiff sent a very clear dispute(s), and yet Trans Union made no changes to the disputed information, bankruptcy status, and/or account status.

40. Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiff's Roundpoint and Loan Care accounts.

41. Upon the Plaintiff's request to Trans Union for verification and addition regarding the disputed mortgage accounts, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Trans Union failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff with a response communicating the results. Further, Trans Union did not make any attempt to substantially or reasonably verify the disputed mortgage accounts.

42. In the alternative, and in accordance with Trans Union's standard procedures, Trans Union failed to contact Freedom, therefore, failed to perform any investigation at all.

43. In the alternative to the allegation that Trans Union failed to contact Freedom, it is alleged that Trans Union did forward some notice of the dispute to Freedom, and Freedom failed to conduct a lawful investigation.

## V.  GROUNDS FOR RELIEF

**COUNT I – EQUIFAX'S VIOLATION OF THE FCRA**
**(15 U.S.C. § 1681e(b))**

44. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

45. Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

46. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

47. Plaintiff furnished Equifax the necessary documentation supporting Plaintiff's tradeline, yet Equifax continued to prepare a patently false consumer report concerning Plaintiff.

48. Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

49. After Equifax knew or should have known Plaintiff's account status in relation to his bankruptcy was inaccurate, they failed to make the corrections. Further, Plaintiff did not request for the Roundpoint mortgage tradeline to be deleted.

50. As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

51. Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In

the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

52. The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

53. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

54. Equifax violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

55. As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

56. Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

57. The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – TRANS UNION'S VIOLATION OF THE FCRA
## (15 U.S.C. §1681e(b))

58. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

59. Trans Union violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

60. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

61. Plaintiff furnished Trans Union the necessary documentation supporting Plaintiff's tradeline, yet Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

62. Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

63. After Trans Union knew or should have known Plaintiff's account status in relation to his bankruptcy was inaccurate, they failed to make the corrections. Further, Plaintiff did not request for the disputed mortgage tradelines to be deleted.

64. As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the

mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

65. Trans Union's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

66. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT IV – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

67. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

68. Trans Union violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

69. As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

70. Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

71. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**COUNT V – FREEDOM'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

72. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

73. Defendant Freedom violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

74. Freedom further violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate the Plaintiff's dispute(s) of the Roundpoint/Freedom representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Roundpoint/Freedom representations to the consumer reporting agencies.

75. As a result of Freedom's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

76. Freedom's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C.

§ 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## COUNT VI – LOAN CARE'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

77. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

78. Defendant Loan Care violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

79. Loan Care further violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate the Plaintiff's dispute(s) of the Loan Care representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Loan Care representations to the consumer reporting agencies.

80. As a result of Loan Care's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

81. Loan Care's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VI. VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

82. Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

83. Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including New Jersey.

84. Plaintiff respectfully requests that this Honorable Court award Plaintiff his litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

85. The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

86. Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

87. Plaintiff suffered a variety of damages, including economic and non-economic

damages as prayed for herein.

88. Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

89. Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff, David Broda, prays that this Honorable Court:

A. Enter Judgment in favor of Plaintiffs and against Defendants Equifax Information Services LLC, Trans Union LLC, Freedom Mortgage Corporation, successor by merger to Roundpoint Mortgage Servicing LLC, and Loan Care LLC jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B. Find that the appropriate circumstances exist for an award of punitive damages to

Plaintiff;

  C. Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

  D. Order that the CRA Defendants, Equifax Information Services LLC and Trans Union LLC, and Furnisher Defendants, Freedom Mortgage Corporation, successor by merger to Roundpoint Mortgage Servicing LLC and Loan Care LLC work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

  E. Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

Date Filed: <u>February 27, 2024</u>

                Respectfully submitted,

                <u>s/ Matthew P. Forsberg</u>
                Matthew P. Forsberg
                NJ State Bar Number 360702021
                Gloria C. Lam
                NJ State Bar Number 286962018
                FCRA-NJ@fieldslaw.com
                **FIELDS LAW FIRM**
                9999 Wayzata Blvd.
                Minnetonka, Minnesota 55305
                (612) 383-1868 (telephone)
                (612) 370-4256 (fax)

                COUNSEL FOR PLAINTIFF

## **JURY DEMAND**

      Plaintiff hereby demands a trial by jury on all issues so triable.

February 27, 2024                         */s/ Matthew P. Forsberg*
Date                                       Matthew P. Forsberg